**Qui Ping ZHENG, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–4446.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 29, 2004.

Decided March 9, 2004.

Gang Zhou, New York, NY, for Petitioner.

Michael P. Lindemann, Linda S. Wernery, Douglas E. Ginsburg, John D. Williams, Rene L. Rocque, United States Department of Justice, Washington, DC, for Respondent.

Before NYGAARD, FUENTES, Circuit Judges and O'NEILL,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

The petitioner, Qui Ping Zheng, appeals from an order of the Board of Immigration Appeals, affirming the decision of the Immigration Judge. The IJ had denied Zheng asylum in the United States, a withholding of removal, and protection under Article 3 of the Convention Against Torture. We conclude that substantial evidence supports the Immigration Judge's decision and, therefore, we will affirm.

## I

Petitioner is a nineteen year old Chinese female who attempted to enter the United states in July 2000. She was refused entry by an immigration officer and detained shortly thereafter. We recite the facts pertaining to Zheng's claim as she alleges they occurred. In October 1999, Zheng's father died of cancer. At a neighbor's suggestion, she began attending Christian meetings in November of that year. Resulting from her association with the Christian group, Zheng began praying regularly and studying the Bible.

In December 1999, petitioner claims that she was caught praying at school and was consequently expelled. Zheng and her mother filed a petition with the school board seeking reinstatement. No response was ever received. The following month, Zheng was visited twice by police at her home. At the time of the second visit, Zheng hid because she believed she would be taken into custody. Zheng testified that the police told her mother that Zheng should appear before them for an interview to discuss her illegal association with an unauthorized religious organization. Zheng alleges that under these circumstances she left China for the United States.

At 16 years of age, Zheng entered the United States. She was arrested by the INS in Arizona where she was held in a juvenile facility. Petitioner filed two asylum claims, the first in November 2000, the second in February 2001. The IJ discounted Zheng's credibility based upon differences between her two asylum applications, her interviews with Immigration Officers, in court testimony later shown to be false, and biographical inconsistencies.

Based on these disparities the IJ found Zheng, the sole witness, to lack credibility. Further, the IJ noted that even if Zheng were credible, her claims did not rise to the level of persecution, nor did they establish that it is more likely than not that she would be harmed if returned to China. Zheng seeks review of the decision of the Board of Immigration Appeals (BIA), which affirmed the decision of the Immigration Judge (IJ) denying Zheng asylum, a withholding of removal and protection under Article 3 of the Convention Against Torture. The BIA issued its decision on November 13, 2002. Thereafter, the peti-

---

* Hon. Thomas O'Neill, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

tion for review was filed in a timely manner.

## II

This Court's jurisdiction over a final order of the Board of Immigration Appeals (BIA) arises under 8 U.S.C. § 1252(a)(1). Under the BIA's streamlining regulations, a single BIA member may affirm an IJ's decision in a single sentence without an opinion if he or she determines that the result was correct, and that "(A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted." *Dia v. Ashcroft*, 353 F.3d 228, 235 (3d Cir.2003), *citing* 8 C.F.R. § 3.1(a)(7)(ii) (2002). When this regulation is exercised by the BIA, it becomes our task to review the IJ's opinion and to determine whether it was supported by substantial evidence. *Dia v. Ashcroft*, 353 F.3d at 234, 245.

## III

■ Zheng's initial argument is that the IJ's decision, finding that she lacked credibility, is not supported by substantial evidence.** We disagree. "[This Court] will not disturb the IJ's credibility determination and findings of fact if they are 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir.2003) quoting *Bala-*

*subramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998).

Here, the record shows several inconsistencies supporting an adverse credibility finding. When interviewed by Immigration Officers in Arizona, Zheng stated that she had no family in the United States and that her father was alive. She later conceded that this information was false. In Zheng's first asylum application she stated that her parents were practicing Christians and that her father had been beaten and killed. This is contrary to both Zheng's second application and to her testimony in which she stated that her parents practiced no religion and that her father died from cancer. Zheng stated that the sex of the neighbor who allegedly introduced her to Christianity was female while her mother's affidavit repeatedly referred to him in the masculine. Zheng listed two different dates as the date on which she graduated from middle school. Finally, Zheng misstated her date of birth and the date on which she left China. These inconsistencies are undisputed and substantial. Therefore, we hold that the IJ's decision to discount Zheng's credibility is supported by substantial evidence.

■ Zheng's second contention is that she has demonstrated sufficient evidence of past persecution and a fear of future persecution to support a claim for asylum and a withholding of removal. To qualify for asylum Zheng must prove that she meets the definition of "refugee" as defined in the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (INA), i.e., she is unable or unwilling to return to her

---

** Zheng argues that application of the *Lozada* requirements to support the IJ's denying her request to completely discount her initial asylum application was erroneous. Zheng Br. at 9. *The Matter of Lozada* sets out the criteria necessary for a claimant to argue that his or her counsel was ineffective. *Matter of Lozada,* 19 I & N Dec. 637, 1988, 1988 WL 235454

(BIA 1988). We need not determine the applicability of *The Matter of Lozada* to the IJ's credibility finding as the record shows that Zheng approved of the information contained in her initial asylum application and understood the penalties associated with submitting a frivolous application.

home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." To qualify for a withholding of removal, an alien must show that, if deported, there is a clear probability that she will be persecuted on account of a specified ground, such as political opinion, if returned to her native country. *8 C.F.R. § 208.16(b)*.

Zheng claims that her expulsion from school based on her practice of Christianity constitutes past persecution and that this, coupled with visits by police to her residence in order to question her, justifies a well-grounded fear of future persecution. In support of her contention, that denial of education can be considered persecution, Zheng relies on a Ninth Circuit case that did not find an appellant's denial of education to be persecution but that seemed to imply that, under certain circumstances, it could be. We are unaware of any Third Circuit or any other Circuit Court decision definitively stating that deprivation of education can be considered persecution. However, even if such a case were to exist, the outcome of this case would remain unchanged as the IJ's ruling was based upon and can stand solely upon the finding that Zheng lacked credibility, a finding that was supported by substantial evidence.

■ Finally, Zheng claims protection under the United Nations Convention Against Torture. To qualify for relief under the United Nations Convention Against Torture, and Other Cruel, Inhuman or Degrading Treatment or Punishment, an alien must prove that she is more likely than not to be tortured in the country of removal. *8 C.F.R. §§ 208.16(c)(2, 4), 208.17*. As the IJ correctly stated, there is no evidence that Zheng has ever been tortured in the past or that she would be tortured if she were returned to China. Therefore, we agree with the IJ's determinations and accordingly, affirm.

## IV

For the reasons set forth above, the Court concludes that substantial evidence supports the Immigration Judge's decision. Accordingly, this Court affirms the decision of the Immigration Judge, affirmed by the Board of Immigration Appeals, to deny asylum and a withholding of removal.